1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

Jenee H.,

               Plaintiff,

    v.

Kilolo Kijakazi, Acting Commissioner of
Social Security,

               Defendant.

Case No. 2:22-cv-01534-DJA

**Order**

Before the Court is Plaintiff Jenee H.'s motion for reversal and/or remand (ECF No. 24) and the Commissioner's cross motion to affirm (ECF No. 27) and response (ECF No. 28). Plaintiff filed a reply. (ECF No. 29). Because the Court finds that the ALJ's decision is supported by substantial evidence, it denies Plaintiff's motion for remand and grants the Commissioner's cross motion to affirm. The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.      Background.**

    ***A.      Procedural history.***

Plaintiff filed an application for Supplemental Security Income benefits on July 24, 2018 alleging disability commencing on January 1, 2013. (ECF No. 24 at 3). Plaintiff's claims were denied by initial determination and again on reconsideration. (*Id.*). Plaintiff requested a hearing before an administrative law judge ("ALJ") and the ALJ issued an unfavorable decision on August 27, 2021. (*Id.*). Plaintiff requested that the Appeals Council review the decision, which request the Appeals Council denied on July 27, 2022, making the ALJ's decision the final agency decision. (*Id.*).

**B.      The ALJ decision.**

Because Plaintiff was under the age of 18 at the time of Plaintiff's application and at the time of the ALJ's decision, the ALJ followed the three-step sequential evaluation process set forth in 20 C.F.R. § 416.924(a).  (AR 15-23).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 24, 2018, the application date.  (AR 16).  At step two, the ALJ found that Plaintiff had the following severe impairments: mood disorder and attention deficit hyperactivity disorder ("ADHD").  (AR 16).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  (AR 16).  In making this finding, the ALJ considered Listings 112.04 and 112.11.  (AR 17-23).  The ALJ thus concluded that Plaintiff was not disabled since July 24, 2018.  (AR 23).

**II.      Standard.**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines

1  substantial evidence as "more than a mere scintilla but less than a preponderance; it is such

2  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d

4  1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are

5  supported by substantial evidence, the court "must review the administrative record as a whole,

6  weighing both the evidence that supports and the evidence that detracts from the Commissioner's

7  conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80

8  F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if

9  supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the

10  evidence will support more than one rational interpretation, the court must defer to the

11  Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

12  *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

13      "The decision whether to remand a case for additional evidence, or simply to award

14  benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

15  1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When a court reverses an ALJ's

16  decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon*

17  *v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

18  Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for

19  additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

20  1090, 1099 (9th Cir. 2014). However, the Ninth Circuit has recognized that in appropriate

21  circumstances, courts are free to reverse and remand a determination by the Commissioner with

22  instructions to calculate and award benefits. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir.

23  2014). The Ninth Circuit has devised a three-part standard, each part of which must be satisfied

24  in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the

25  record has been fully developed and further administrative proceedings would serve no useful

26  purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence,

27  whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence

28

1    were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at

2    1020.

3    **III.     Disability evaluation process.**

4            For an individual under eighteen years of age to be considered disabled for the purpose of

5    receiving benefits, he must suffer from a "medically determinable physical or mental impairment,

6    which results in marked and severe functional limitations, and which can be expected to result in

7    death or which has lasted or can be expected to last for a continuous period of not less than 12

8    months." 42 U.S.C. § 1382c(a)(3)(C)(i).  An impairment meets this requirement if it meets or

9    equals in severity any impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the

10   "listings").  20 C.F.R. § 416.924(d).

11           The Regulations promulgated by the Social Security Administration establish a three-step

12   sequential evaluation process for child disability cases.  *See* 20 C.F.R. § 416.924.  At step one, the

13   relevant inquiry is whether the child is engaged in substantial gainful activity.  20 C.F.R.

14   § 416.924(a).  If so, no disability exists, and the claim is denied.  20 C.F.R. § 416.924(b).  If the

15   child is not engaged in substantial gainful activity, the fact finder then determines whether the

16   child has a medically determinable impairment or combination of impairments that is severe.  20

17   C.F.R. § 416.924(a).  If the impairment is a "slight abnormality or a combination of slight

18   abnormalities that causes no more than minimal functional limitations," the Commissioner will

19   find that the impairment is not severe and will deny the child's claim.  20 C.F.R. § 416.924(c).

20           If the child has a severe impairment, the third and final step assesses whether the

21   impairment meets or medically or functionally equals in severity an impairment in the listings.

22   20 C.F.R. § 416.924(d).  If the impairment meets or equals the requirements of a listing, the child

23   will be found disabled, assuming that the 12-month duration requirement is also met.  *Id*.

24           To determine whether a child's severe impairment functionally equals a listed impairment,

25   the Commissioner assesses all the functional limitations caused by the child's impairment in six

26   domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting

27   and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and

28   (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  To functionally equal a

listed impairment, a child's impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme." *Id*. A child's "day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities." *Id*. An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). It is the rating given to "the worst limitations." *Id.*

**IV.     Analysis and findings.**

> **A.     *Whether the ALJ's finding that Plaintiff's impairments did not functionally equal a listed impairment lacks the support of substantial evidence.***

>> 1.     The parties' arguments.

Plaintiff argues that the evidence supports that she has marked limitations in three domains: (1) the ability to attend to and complete tasks; (2) the ability to interact and relate with others; and (3) the ability to care for herself. (ECF No. 24). However, the ALJ found that she had less-than-marked limitations in these domains, which findings Plaintiff asserts were not supported by substantial evidence. Regarding the first, ability to attend to and complete tasks domain, Plaintiff points out that a March 14, 2019 Individualized Educational Program ("IEP"); a March 15, 2019 Multidisciplinary Team ("MDT") report; a March 25, 2019 teacher questionnaire by James Byers; a September 8, 2020 IEP; and a March 26, 2021 teacher questionnaire by Melissa Pegg all support a marked limitation. She points to portions of those records noting that she was off task, distracted, needed re-direct, did not complete her homework, did not follow directions, did not use her time appropriately, had difficulty focusing, had difficulty organizing her things, distracted others, could not work at a reasonable pace, struggled to wait to take turns, and had problems changing from one task to another without being disruptive. Regarding the second, ability to interact and relate with others domain, Plaintiff points to the March 15, 2016 MDT report; an October 2016 hospitalization for violent behavior; a December 2016 report by

1    her mother that Plaintiff pulled a knife on her; an April 2017 court-mandated Adolescent Partial

2    Program to address violence and disruptive behavior; an August 2017 note that Plaintiff was

3    volatile and disrespectful of her mother; and Mr. Byers and Ms. Pegg's teacher questionnaires.

4    Plaintiff pointed out that these records demonstrated deficits in her social/emotional functioning;

5    problems socializing well with peers or responding to authority appropriately; aggression; thirty-

6    six behavior infractions in a school year; her eligibility for special education under the category of

7    "emotional disturbance"; problems expressing anger and asking permission; and difficulty

8    interpreting facial expression, body language, and sarcasm.  Regarding the third, ability to care

9    for self domain, Plaintiff points to a January 2017 hospitalization for an altercation; her refusal to

10   take her medication in August 2017; a report by her mother in January 2019 that Plaintiff might

11   have a razor under her pillow; a legal hold in March 2019 after a drug overdose; and Mr. Byers

12   and Ms. Pegg's teacher questionnaires.  Plaintiff points out that these demonstrate her inability to

13   care for herself; poor insight and judgment; difficulty responding to changes in her own mood;

14   inability to use proper coping skills and to handle frustration appropriately; difficulty being

15   patient; problems identifying and asserting her emotional needs; and problems responding to

16   changes in her own mood.

17         The Commissioner responds that the ALJ's findings at step three are supported by

18   substantial evidence.  Regarding the first, attending and completing tasks domain, the

19   Commissioner points out that the record is mixed, containing both normal and abnormal findings

20   regarding Plaintiff's attention and concentration.  Ultimately, however, only one of Plaintiff's

21   teachers—Ms. Pegg—found her to have a serious problem in one area in this domain, while other

22   teachers found "obvious problems" which do not equate to "marked limitations."  Prior

23   administrative medical findings ("PAMFs") also assessed no limitation in this domain.

24   Additionally, Plaintiff's IEP notes demonstrated improvement and Plaintiff testified at her

25   hearing that she was not receiving any special help or special education while going to school

26   remotely.  The ALJ acknowledged these mixed findings and found that, although the record

27   supports some limitation, it indicates that Plaintiff's limitations are less than marked.  Regarding

28   the second, interacting and relating with others domain, the Commissioner again argues that

1    Plaintiff's records are mixed.  While records indicate that she had anger issues, got in fights, and

2    demonstrated volatile behavior in 2016 and 2017, Plaintiff testified that she was learning to

3    manage her emotions.  Plaintiff testified, "I used to have anger issues when I was like 12 and I'm

4    almost 18 and I know how to control myself." (AR 48).  Plaintiff's records also demonstrated

5    mixed examination findings regarding her behavior, eye contact, and speech.  Her teacher

6    evaluations also differed.  While Mr. Byers and Ms. Pegg agreed that Plaintiff had very serious

7    problems respecting authority, they disagreed in their level of limitations regarding asking

8    permission, following rules, and expressing anger appropriately.  And Plaintiff's case manager—

9    Norina David—found no problems in this domain, which squared with the PAMFs finding less

10   than marked limitations in this domain.  Regarding the third, ability to care for self domain, the

11   Commissioner argues that the ALJ highlighted Plaintiff's testimony and treatment notes

12   demonstrating that she could perform household chores and had normal grooming and hygiene.

13   The teacher questionnaires again differed on this domain, with Mr. Byers finding serious

14   problems and Ms. Pegg finding obvious problems in certain categories.  And again, Ms. David's

15   questionnaire and the PAMFs found no problems.

16          Plaintiff replies that the Commissioner failed to point to where the ALJ explained the

17   nexus from the data to his conclusions.  (ECF No. 29).  Plaintiff asserts that the ALJ failed to

18   articulate a logical and rational basis for his decision.  Although the ALJ summarized the

19   evidence, he did not provide rationale for offering his conclusion.

20                    2.       Analysis.

21          Under the substantial evidence test, findings must be upheld if supported by inferences

22   reasonably drawn from the record.  *Batson v. Commissioner of Social Security Administration*,

23   359 F.3d 1190, 1193 (9th Cir. 2004).  When the evidence will support more than one rational

24   interpretation, the court must defer to the Commissioner's interpretation.  *See Burch v. Barnhart*,

25   400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453,

26   1457 (9th Cir. 1995).  The role of the Court on review is not to reweigh the evidence and arrive at

27   an independent conclusion, but to determine whether the ALJ's findings were supported by

28   substantial evidence and based on the proper legal standard.  *Morris v. Colvin*, No. 2:13-cv-

01940-GMN-VCF, 2014 WL 4977338, at *2 (D. Nev. Oct. 6, 2014) (citing *Smolen v. Charter*, 80 F.3d 1273, 1279 (9th Cir. 1996) and *Burch v. Barnhart*, 400 F.3 676, 679 (9th Cir. 2005)). Courts in this District have rejected the argument that an "obvious" problem translates to a "marked" limitation. *Christina M. v. Comm'r of Soc. Sec.*, No. EDCV 21-676-KK, 2022 WL 16949673, at *5 (C.D. Cal. Sept. 6, 2022). Additionally, the ALJ will not rely on any single piece of information in isolation to establish whether the claimant has a "marked" or "extreme" limitation in a domain. *Tijerina on behalf of A.V. v. Kijakazi*, No. 21-35559, 2022 WL 2064667, at *2 (9th Cir. June 8, 2022).

Here, the Court finds that substantial evidence supported the ALJ's findings that Plaintiff had less-than-marked limitations in the domains of attending and completing tasks, interacting and relating with others, and ability to care for self. Regarding attending and completing tasks, the ALJ correctly noted and cited that the record demonstrated both normal and abnormal clinical findings. (AR 369, 371, 376, 378, 382, and 455). The ALJ weighed this evidence and determined that Plaintiff had less-than-marked limitations in this domain, which finding Plaintiff's proffered evidence does not undermine such that the Court can find in her favor. Mr. Byers' report did not rate Plaintiff as having any worse than an "obvious problem" in any activity in this domain. (AR 227). And Mr. Byers did not include an extensive explanation under these ratings, simply stating that "Jenee struggles to start and continue working." (AR 227). While Ms. Pegg rated Plaintiff to have a "serious problem" in one activity, she did not rate Plaintiff as having any worse than an "obvious problem" in the remaining activities in this domain. (AR 306). Ms. Pegg also only elaborated briefly in comments that "Jenee is frequently distracted and has difficulty completing assignments in a timely manner." (AR 306). The ALJ also pointed out that both PAMFs, Dr. Ana Olivares Psy.D. and Dr. Kelly O'Neill assessed Plaintiff as having no limitation in attending and completing tasks. (AR 83, 97). The March 14, 2019 IEP also demonstrates mixed findings, stating that Plaintiff is often off task but also noting that "[s]he does occasionally work on her assignments, and when she does she is able to complete the task assigned," and "she does take re-direction much better than at the beginning of the year." (AR 403). That record also noted that "[w]hen Jenee chooses to focus, she get her work done and is

improving in her writing and reading comprehension." (AR 403).  The March 15, 2019 MDT and September 8, 2020 IEP also demonstrated mixed findings.  (AR 418-19); (AR 290, 296-97).

Regarding interacting and relating with others, the records the ALJ cited again demonstrated what the ALJ noted: both normal and abnormal clinical findings regarding behavior, eye contact, and speech.  (AR 22, 340, 349, 367, 369, 371, 376, 378, 382, 486, 520, 547, 553, 559).  And Plaintiff's proffered evidence does not undermine the ALJ's finding that, despite the varying evidence, the weight of the evidence supported a less than marked finding. While Ms. Pegg identified two activities in which Plaintiff had a "very serious problem," Mr. Byers found Plaintiff to only have a "serious problem" in one activity.  (AR 228, 301).  And again, PAMFs Dr. Olivares and Dr. O'Neill found Plaintiff to have a less than marked limitation in this domain.  (AR 83, 97).  The ALJ acknowledged the IEP to which Plaintiff cites as stating that Plaintiff had a profound deficit in the area of social/emotional[1] (AR 20), but also noted that Plaintiff testified that she was no longer on an IEP and was expected to graduate (AR 19).  The ALJ also acknowledged Plaintiff's mandated participation in the Adolescent Partial Program[2] (AR 22, AR 349-53), cited to the record in which Plaintiff was hospitalized for pulling a knife on her mother (AR 20, AR 320-22), and cited to the records of Plaintiff's psychiatric visits in which her mother reported Plaintiff pulling a knife and in which Plaintiff was volatile and disrespectful (AR 20, AR 367-389).  However, the ALJ noted that Plaintiff testified that she had more recently been able to manage her emotions and noted that Plaintiff's records contained mixed normal and abnormal findings.  (AR 22).  And while Plaintiff points out that she had thirty-six behavior infractions in 2019 and was found to be eligible for special education services (AR 419, 426) , the ALJ noted in his decision that Plaintiff was no longer on an IEP and expected to graduate.  (AR 19).

---

[1] Plaintiff refers to this as the March 15, 2016 MDT report, but that appears to be a typo because she cites to and refers to the contents of the IEP.  (ECF No. 24 at 7).

[2] The ALJ refers to Exhibit 8F, but this appears to be a typo because the Adolescent Partial Program appears at Exhibit 3F.  (AR 22).

Regarding the ability to care for self domain, the ALJ appropriately considered Plaintiff's testimony that she was able to perform household chores and noted that treatment notes generally demonstrated normal clinical findings regarding grooming and hygiene. (AR 22). While the ALJ did not cite to specific pages for this conclusion, each of the pages the ALJ cites for its previous conclusions regarding normal and abnormal findings include normal hygiene and grooming findings (AR 22). Again, Plaintiff's proffered evidence does not undermine the ALJ's finding that, despite the varying evidence, the weight of the evidence supported a less than marked finding. The ALJ acknowledged Plaintiff's hospitalization in January of 2017, but noted that mental status examinations generally showed normal objective findings respecting memory, fund of knowledge, thought process, grooming and hygiene while Plaintiff testified that she had improved with managing her emotions. (AR 20, 340). While the ALJ cited to records demonstrating that Plaintiff refused to take her medications in August of 2017 (AR 378), the ALJ also cited to records showing that she had later improved and continued medication (AR 376). Although her mom was concerned that that Plaintiff was keeping a razor under her pillow in January of 2019, the ALJ acknowledged this record as one of the mixed normal and abnormal findings. (AR 367). Indeed, in that same report, Plaintiff's mother also reported that Plaintiff had stable moods overall and no recent cutting or self-harm behavior. (AR 367). The ALJ also noted that Plaintiff was placed on a legal hold in March of 2016 for suicide risk (AR 473), but the ALJ contrasted this record with Plaintiff's testimony that she had learned to control her own emotions (AR 20). Mr. Beyers found that Plaintiff had "serious problems" with two activities in this domain but did not provide further explanation (AR 230) while Ms. Pegg assessed a "serious problem" with only one activity in this domain (AR 309). And again, the PAMFs did not assess any limitations in this domain. (AR 83, 98).

Ultimately, Plaintiff's arguments ask the Court to re-weigh the evidence. However, where the evidence would support more than one rational interpretation, the Court must defer to the ALJ. The Court does so here and denies Plaintiff's motion for remand.

**B.**      ***Whether the ALJ failed to properly evaluate Plaintiff's subjective symptoms.***

1.      <u>The parties' arguments.</u>

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective symptoms. (ECF No. 24).  After Plaintiff and her mom testified as to the limiting effect of her mental impairments, Plaintiff asserts that the burden shifted to the ALJ to articulate clear and convincing reasons for rejecting that testimony, which burden the ALJ did not carry.  Plaintiff explains that the ALJ rejected her testimony because there was an inconsistency regarding whether she played videogames and the October 2019 teacher questionnaire by Ms. David finding that Plaintiff had no problems in the six domains.  But Plaintiff asserts that the questionnaire was inconsistent with a March 2019 MDT report and a September 2020 IEP and thus, the ALJ's reliance on it did not constitute clear and convincing evidence.  Plaintiff adds that the ALJ failed to consider the waxing and waning of her symptoms.  Additionally, Plaintiff argues that the ALJ asserting that the objective evidence did not support the degree of Plaintiff's limitations is insufficient to discredit her subjective symptoms because "excess pain" is by definition pain unsupported by objective findings.

The Commissioner responds that the ALJ appropriately identified inconsistencies in Plaintiff's testimony and the record when evaluating Plaintiff's symptom allegations.  The ALJ noted that the record contained mixed normal and abnormal findings regarding Plaintiff's judgment, insight, behavior, and mood, amongst other mental health symptoms.   Thus, the Commissioner argues, the ALJ acknowledged the waxing and waning of Plaintiff's symptoms but determined, on balance, that the record did not show that Plaintiff was as limited as she claimed. Regarding Plaintiff's argument that it was legally insufficient for the ALJ to rely on objective medical evidence alone to find that the degree of limitation was not supported, the Commissioner points out that the ALJ also relied on statement inconsistencies, school records, and PAMFs to reach this conclusion.  And Plaintiff does not argue against the ALJ's determination that the objective evidence did not support her symptom allegations.  The Commissioner adds that the ALJ looked at Plaintiff's treatment throughout the record and noted that Plaintiff demonstrated improvement over time.  Finally, regarding Ms. David's "outlier" questionnaire that Plaintiff

1   asserts the ALJ relied on, the Commissioner points out that the ALJ did not consider this

2   questionnaire to the exclusion of all others, but considered it along with the others.  Ultimately,

3   the ALJ found the PAMFs persuasive, but in the end concluded that Plaintiff was more limited

4   even than the PAMFs.

5          Plaintiff replies that the ALJ did not properly consider the waxing and waning of her

6   symptoms, but cherry picked the evidence that supported his conclusion.  (ECF No. 29).  Plaintiff

7   argues that the ALJ's reliance on the non-examining PAMFs was misplaced.  Plaintiff concludes

8   that, assuming for argument that there was a lack of objective evidence to support her testimony,

9   the lack of objective evidence alone is not a legally sufficient ground on which to discount her

10  complaints.

11                  2.      Analysis.

12         Determining the credibility of a claimant's testimony about subjective symptoms is a two-

13  step process.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007).  "First, the ALJ

14  must determine whether the claimant has presented objective medical evidence of an underlying

15  impairment 'which could reasonably be expected to produce the pain or other symptoms

16  alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  "Second,

17  if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject

18  the claimant's testimony about the severity of her symptoms only by offering specific, clear and

19  convincing reasons for doing so.'"  *Id.* (quoting *Smolen*, 80 F.3d at 1281).  "The clear and

20  convincing standard is the most demanding required in Social Security cases."  *Garrison v.*

21  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

22  F.3d 920, 924 (9th Cir. 2002)).  The ALJ must identify with specificity "what testimony is not

23  credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d

24  821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).  As of March 2016, the Social Security

25  Administration has eliminated the use of the term "credibility" from its policy, as "subjective

26  symptom evaluation is not an examination of an individual's character."  SSR 16-3p.  However,

27  ALJs may continue to consider the consistency of a claimant's statements compared to other

28  statements by the claimant and to the overall evidence of the record.  *See id.*

Here, the ALJ appropriately identified what testimony was not credible and what evidence undermined that testimony.  Specifically, the ALJ explained that, although Plaintiff testified that her medications and therapy did not work, that testimony was undermined by her testimony that she had learned to control her emotions.  (AR 29).  While Plaintiff testified that she did not play games, she previously reported that she enjoyed video games like Fortnite.  (AR 29).  The ALJ also pointed out that Plaintiff had reported traveling to visit her sister, indicating that she could adapt and manage herself for those purposes.  (AR 20).   The ALJ also noted Plaintiff's teachers' varying conclusions about her limitations and determined that the questionnaires generally reflected Plaintiff's difficulty with concentration and controlling her emotions, but did not suggest marked limitations.  (AR 20-21).  The PAMFs also opined that Plaintiff had less than marked or no limitations in all domains.  (AR 21).  The Court does not find that the ALJ relied solely on medical evidence to find Plaintiff's testimony less consistent with the record.  As just discussed, the ALJ also relied on Plaintiff's own testimony, teacher reports, and PAMFs.  For the same reason, the Court does not find that the ALJ relied exclusively on Ms. David's teacher questionnaire, but compared that questionnaire with the evidence as a whole.  Ultimately, Plaintiffs arguments again ask the Court to re-weigh the evidence and reach a different conclusion than the ALJ.  However, because the evidence would support more than one rational interpretation, the Court must defer to the ALJ.


**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 24) is **denied.**

 **IT IS FURTHER ORDERED** that the Commissioner's countermotion to affirm (ECF No. 27) is **granted.**  The Clerk of Court is kindly directed to enter judgment accordingly and close this case.


DATED: September 15, 2023,

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE